IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CT-3031-FL

| | | |
|---|---|---|
| OTTIS MCGILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SHERIFF JAMES A. MCVICKER, CHIEF | ) | |
| BOBBY KINLAW, DETECTIVE MARK R. | ) | |
| MCMICHAEL, ELIZABETHTOWN POLICE | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the motion for summary judgment filed by defendant Mark R. McMichael (DE 31), pursuant to Federal Rule of Civil Procedure 56. The motion been fully briefed and thus the issues raised are ripe for decision. Also before the court is plaintiff's motion for the appointment of counsel (DE 44).

## STATEMENT OF THE CASE

On January 29, 2016 plaintiff, a state inmate proceeding pro se, filed the instant civil rights action pursuant to 42 U.S.C. § 1983 in the United States District Court for the District of Maryland. Plaintiff alleged that he was falsely arrested for robbery with a dangerous weapon and misdemeanor larceny. The District of Maryland transferred the case to this court on February 5, 2016. On September 16, 2016, the court dismissed plaintiff's claims against defendants Sheriff James A. McVicker, Chief Bobby Kinlaw, and Elizabeth Police Department pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). In addition, the court noted that plaintiff's claims against defendant Mark R.

McMichael may either be barred pursuant to <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994), or, in the alternative, abstention pursuant to <u>Younger v. Harris</u>, 401 U.S. 37, 41 (1971) may be appropriate. Therefore, the court instructed plaintiff to particularize his complaint by stating the current status of the criminal process with regard to the arrest and related proceedings described in his complaint.

In his particularized complaint, plaintiff alleged McMichael fraudulently obtained a warrant to arrest him. Plaintiff also alleged that McMichael falsely testified at plaintiff's trial. Finally, plaintiff asserted that the criminal charges related to his complaint were eventually dismissed. Accordingly, the court allowed plaintiff to proceed with his claims against McMichael.

On April 27, 2017, plaintiff filed motion to appoint counsel, which the court subsequently denied. McMichael answered plaintiff's complaint on May 22, 2017. On June 23, 2017, the court entered a case management order governing discovery and dispositive motions deadlines. McMichael filed the instant motion for summary judgment on November 30, 2017, arguing the record evidence establishes no reasonable jury could find he falsely arrested or maliciously prosecuted plaintiff. McMichael also argues he is entitled to qualified immunity. In support of the motion, McMichael filed a statement of material facts and appendix, which included defendant McMichael's personal affidavit and certain state court records.

Plaintiff responded to McMichael's summary judgment motion by filing a memorandum in opposition, a statement of material facts, and an appendix. As exhibits attached to the appendix and response, plaintiff filed a declaration, various state court records, and a copy of McMichael's summary judgment materials.

On September 17, 2018, after McMichael's summary judgment motion was fully briefed,

plaintiff renewed his request for the appointment of counsel.

## STATEMENT OF THE FACTS

As McMichael moved for summary judgment, the court recounts the facts in the light most favorable to plaintiff, drawing all reasonable inferences in his favor. McMichael is a detective with the Elizabethtown police department. (McMichael Aff. (DE 34-1) ¶ 2. On August 20, 2013, he investigated an armed robbery that occurred at the Minuteman gas station in Elizabethtown, North Carolina. (Id. ¶ 3). During this investigation McMichael interviewed an eyewitness, Crystal Moore. (Id.). McMichael also reviewed video footage of the robbery. (Id.).

Shortly after the robbery, a gold Saturn vehicle was involved in a police chase. (Id. ¶ 4). Police believed the armed robbery suspect was driving the Saturn. (Id.). After the chase, the driver fled the vehicle. (Id. ¶). McMichael subsequently searched the vehicle, and found documents with plaintiff's name. (Id.); (Am. Compl. (DE 14 at 5)) . Similarly, McMichael later discovered that plaintiff's sister owned the Saturn. (McMichael Aff. (DE 34-1) ¶ 4). McMichael also interviewed plaintiff's sister. (Id. ¶ 5). She confirmed that plaintiff possessed the Saturn at the time of the robbery. (Id. ).

Finding probable cause, magistrate judge issued an arrest warrant for plaintiff for robbery with a dangerous weapon and possession of stolen goods. (Def. Ex. 3 (DE 34-3)). McMichael did not personally arrest plaintiff. (McMichael Aff. (DE 34-1) ¶ 6). A grand jury later indicted McGill for robbery with a dangerous weapon and possession of stolen goods. (Def. Ex. 2 (DE 34-2)). McMichael did not testify at plaintiff's grand jury hearing. (McMichael Aff. (DE 34-1) ¶ 8).

Plaintiff's trial resulted in a jury deadlock and the court declared a mistrial. (Def. Ex. 4 (DE 34-4)). In dismissing the charges, the trial court noted that plaintiff "received a 20-year active

sentence on similar charges in New Hanover County." (Id.). McMichael testified at plaintiff's trial.

## DISCUSSION

A.      Motion to Appoint Counsel

As the court previously noted, there is no constitutional right to counsel in civil cases, and courts should exercise their discretion to appoint counsel for *pro se* civil litigants "only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances justifying appointment of counsel depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989) (quoting Branch v. Cole, 686 F.2d 264 (5th Cir. 1982)); see also Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978) ("If it is apparent . . . that a pro se litigant has a colorable claim but lacks capacity to present it, the district court should appoint counsel to assist him."). Because plaintiff's claim is not complex, and where he has demonstrated through the detail of his filings he is capable of proceeding *pro se*, this case is not one in which exceptional circumstances merit appointment of counsel. The arguments raised in plaintiff's renewed motion do not alter this analysis. Therefore, plaintiff's motion to appoint counsel (DE 44) is DENIED.

B.      Motion for Summary Judgment

1.      Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading" but "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248-49; see also Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party thus "bears the burden of showing, by means of affidavits or other verified evidence, that [a] genuine dispute of material fact exists." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

      2.     Analysis

          a.     False Arrest, False Imprisonment, and Malicious Prosecution

Section 1983 claims for false arrest and false imprisonment properly are evaluated under the Fourth Amendment to the United States Constitution.[1] See Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001) (providing that claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment"); Harris v. Foy, No. 5:09-CT-3124-FL, 2012 WL 2339503, at *3 (E.D.N.C. June 19, 2012) (evaluating pre-trial detainee's false arrest claim under the Fourth Amendment). To establish a § 1983 claim based on the Fourth Amendment for false arrest or false imprisonment, a plaintiff must show that the seizure

_____

[1] Plaintiff purports to proceed under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States constitution. (Am. Compl. (DE 14) at 5). However, his stated claims clearly allege Fourth Amendment violations, and the Fourth Amendment is made applicable to the states through the Fourteenth Amendment. With regard to his Fifth and Eighth Amendment violations, plaintiff, he has not alleged any additional supporting facts. On the contrary, plaintiff explicitly disclaims any challenge to his conditions of confinement. (Id. at 8). Accordingly, plaintiff's Fifth and Eighth Amendment claims are DISMISSED.

was made without probable cause. See Massey v. Ojaniit, 759 F.3d 343, 356 (4th Cir. 2014). "[T]he concept of probable cause defies a precise definition." United States v. Richardson, 607 F.3d 357, 369 (4th Cir. 2010). Probable cause exists when, under the totality of the circumstances, there is a "fair probability" that criminal activity has taken place. Illinois v. Gates, 462 U.S. 213, 246 (1983). Here, plaintiff argues that although he was arrested pursuant to a warrant, based on the magistrate judge's probable cause determination, neither of these were in actuality supported by probable cause because that determination was based on defendant McMichael's dishonesty.

In analyzing these claims, the court finds instructive the Fourth Circuit's opinion in Miller v. Prince George's Cty., MD, 475 F.3d 621 (4th Cir. 2007). There, plaintiff was pulled over by a Virginia state trooper during a routine department of motor vehicles check and discovered an outstanding Maryland warrant for theft and took plaintiff into custody. Id. at 626. There, as here, the warrant had been issued based on a detective's affidavit that plaintiff alleged was dishonest. Id. at 627. There, as here, the detective asserted that qualified immunity protected him from liability for a federal constitutional violation. Id. at 626.

The court held issues of material fact existed regarding whether the detective presented false statements in his warrant affidavit, and the court determined, when considering the facts in light most favorable to plaintiff, 1) a reasonable jury could conclude that the affidavit contained misrepresentation and omissions made deliberately or with reckless disregard for the truth, 2) such misrepresentations and omissions were material, and 3) a "corrected" affidavit, without such misrepresentations and omissions, would not have provided probable cause. Id. at 629. The court also noted that "the fact that [the detective] was not the arresting officer [does not] eliminate his responsibility for the natural consequences of his use of intentionally or recklessly false material

6

misstatement and omissions to obtain the arrest warrant." Id. at 630.

However, in Miller, significant evidence was presented that the detective's affidavit contained misrepresentation and omissions made deliberately or with reckless disregard for the truth. See id. at 624-26. Here, as stated previously, the only evidence before the court that defendant McMichael's affidavit contained deliberate misrepresentations is plaintiff's repeated but conclusory assertions stating so. (See, e.g. (Pl's Aff. (DE 41-1) ¶¶ 13-16).

Further distinguishing the instant case from Miller is the fact that an grand jury found probable cause to indict plaintiff without relying on McMichael's testimony. Gerstein v. Pugh, 420 U.S. 103, 117 n. 19 (1975) ("[A]n indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause.") (internal quotation marks omitted). Indeed, plaintiff concedes to facts supporting probable cause on the face of his complaint. For example, plaintiff concedes that materials identifying him were located in gold Saturn involved in a police chase shortly after the robbery occurred. (Am. Compl. (DE 14 at 5). He also concedes that his sister owned the gold Saturn, and that he possessed the gold Saturn during the time of the robbery. (Id.). These undisputed facts are sufficient to establish probable cause. See Brown v. Gilmore, 278 F.3d 362, 367–368 (4th Cir. 2002) (defining probable cause).

Regarding plaintiff's malicious prosecution claim, "[w]hat is conventionally referred to as a '§ 1983 malicious prosecution' action is nothing more than a § 1983 claim arising from a Fourth Amendment violation." Lambert v. Williams, 223 F.3d 257, 260 (4th Cir. 2000) "To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012).

In sum, plaintiff has offered the court no evidence beyond his own conclusory allegations in support of his malicious prosecution claim, just as he failed to do so regarding his false arrest and false imprisonment claims. Likewise, although plaintiff asserts that McMichael relied upon misrepresentations to obtain an arrest warrant, he also concedes the truth of facts sufficient to support probable cause. Accordingly, the court finds plaintiff has failed to demonstrate there exists a genuine issue of material fact requiring trial. Therefore, there is no constitutional violation, defendant McMichael is entitled to qualified immunity, and the court grants defendant McMichael's motion for summary judgment as to these claims.

        b.        State-Law Claims

Plaintiff's amended complaint could be liberally construed to allege violations of North Carolina law including, intentional infliction of emotional distress, false arrest or imprisonment, and malicious prosecution. (See Am. Compl. (DE 14 at 5, 7)). A district court may decline to exercise supplemental jurisdiction over a claim if the district court dismisses all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); see Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); see also Gantt v. Whitaker, 203 F.Supp.2d 503, 512 (M.D.N.C. Feb. 26, 2002) (declining to exercise supplemental jurisdiction over plaintiff's state law claims including those again the sheriff's official bond), aff'd, 57 Fed. Appx. 141 (4th Cir. 2003). The court declines to exercise its supplemental jurisdiction over such claims. Accordingly, plaintiff's state-law claims are dismissed.

## CONCLUSION

Based on the foregoing, McMichael's motion for summary judgment (DE 31) is GRANTED and plaintiff's motion to appoint counsel (DE 44) is DENIED. Plaintiff's federal claims are DISMISSED, and plaintiff's state-law claims are DISMISSED without prejudice. The clerk is

DIRECTED to close this case.

SO ORDERED, this the 26th day of September, 2018.

LOUISE W. FLANAGAN
United States District Judge